## MINNESOTA PUBLIC INTEREST RESEARCH GROUP v. MINNESOTA DEPARTMENT OF LABOR AND INDUSTRY AND OTHERS.

249 N. W. 2d 437.

November 5, 1976—No. 46188.

*Elliot C. Rothenberg* and *Michael Milgrom,* for appellant.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, and *Thomas H. Jensen* and *Eugene R. Gaetke,* Special Assistant Attorneys General, for respondents.

Considered and decided by the court en banc.

TODD, JUSTICE.

In the fall of 1974, the Minnesota Department of Labor and Industry (DLI) published notice of proposed standards regulating the use of vinyl chloride and certain carcinogens. On December 17, 1974, the Minnesota Public Interest Research Group (MPIRG) timely submitted written comments and requested a public hearing on the proposed standards. No other requests for a public hearing were received by DLI. The commissioner of DLI scheduled a hearing in response to MPIRG's request, but it was subsequently canceled, and the proposed standards were promulgated on February 13, 1975, without any public hearing. MPIRG then instituted an action seeking a declaratory judgment that the standards were invalid. DLI moved to dismiss on the grounds that MPIRG was not an "interested person" entitled

to request a hearing under the governing provisions of the Minnesota statutes and thus had not stated a claim upon which relief could be granted, and that it had no standing to institute the judicial action. The lower court found that MPIRG was an interested person but that it had no standing, and judgment was entered granting DLI's motion to dismiss. MPIRG appeals from the dismissal of its action for lack of standing, and DLI filed a notice of review as to the determination that MPIRG is an "interested person." We affirm the holding that MPIRG is an "interested person" and reverse the holding that MPIRG lacked standing.

The Minnesota Occupational Safety and Health Act of 1973, Minn. St. 182.65 to 182.674 (Minnesota Act), provides for a program of regulation and enforcement to promote the prevention of personal injuries and illnesses arising out of work situations. The Minnesota Act was an adjunct to the United States Occupational Safety and Health Act of 1970 (Federal Act), 29 USCA, § 651 to 678, effective in 1971, which provided that a state could assume responsibility for the development and enforcement of standards relating to occupational safety and health by submitting a plan for the approval of the United States Secretary of Labor. 29 USCA, § 667. The State of Minnesota submitted a plan, comprised in part of the Minnesota Act, which received the necessary approval.

The Minnesota Act authorizes the commissioner of labor and industry to issue standards governing occupational safety and health, and prescribes procedures for the promulgation of such standards. Minn. St. 182.655. Under these procedures, the commissioner of DLI may, in order to serve the objectives of the Act, publish a proposed rule relating to an occupational safety or health standard, and "interested persons" may submit written data or comments on the proposed rule, written objections thereto, and request a public hearing on such objections. Minn. St. 182.655, subd. 2.[1]

---

[1] Minn. St. 182.655, subd. 2, provides in pertinent part: "Whenever the commissioner, in order to serve the objectives of Laws 1973, Chapter

On this appeal we must determine (1) whether MPIRG is an "interested person" for purposes of Minn. St. 182.655, subd. 2, and (2) whether MPIRG has standing to seek judicial review of the validity of DLI's promulgation of occupational safety and health standards governing vinyl chloride and carcinogens.

1. MPIRG contends that it is an "interested person" for purposes of being entitled to a hearing pursuant to Minn. St. 182.655 on the following grounds: (a) Since many of its members (all students) work to finance their education, they therefore have a direct stake in occupational safety and health standards; and (b) it has engaged in research on such standards and is in possession of relevent scientific data. On the other hand, DLI urges that only employers and employees directly affected by proposed standards are "interested persons", and that, since MPIRG did not allege that it or any of its members are employers or employees directly affected by such standards, i. e., working with or near the toxic substances involved, MPIRG therefore is not an "interested person."

The term "interested person" is not defined in the Minnesota Act. However, analysis of various provisions of the Minnesota Act reveals a legislative intent that such term be broadly construed. The broader construction urged by MPIRG is further supported by regulations promulgated by the Secretary of Labor pursuant to the Federal Act.

First, the language and purposes of the Minnesota Act reflect a legislative intention that the term "interested person" not be

---

732, determines that a rule should be promulgated under this section, establishing, modifying or revoking an occupational safety and health standard, the commissioner shall publish a proposed rule promulgating, modifying, or revoking an occupational safety or health standard and shall afford interested persons a period of 30 days after publication to submit written data or comments.

"On or before the last day of the period provided for the submission of written data or comments, any interested person may file with the commissioner written objections to the proposed rule, stating the grounds therefor and requesting a public hearing on such objections."

limited to employers and employees directly affected by the proposed standard, but also include members of the general public. The provision which outlines the legislative purpose of the Minnesota Act, Minn. St. 182.65, subd. 2, stresses that "the greatest hope" for attaining its objective of assuring "so far as possible every working man and woman in the state * * * safe and healthful working conditions" lies in "programs of research and education." Similarly, Minn. St. 182.655, subd. 4, provides that the development of standards is to be "based upon research, demonstrations, experiments, and such other information as may be appropriate," and that among the relevant considerations is "the latest available scientific data in the field." MPIRG argues, and we agree, that the obvious legislative intent of encouraging DLI reliance upon current scientific research cannot be accomplished by limiting DLI's consideration to such research and data as may be provided by employers and employees directly affected by proposed standards.

MPIRG was the only party to submit written comments and requests for public hearings as to either of the proposed standards. No comments or hearings requests were made by any other employee, employer, or organization of employees or employers. Therefore, in this case, the data which MPIRG proposed to submit at the hearing it requested would be the only available means of ensuring that these standards complied with the statutory objective of being based upon the latest scientific information in the field. As the trial court stated in its memorandum:

"The assertion by Defendants that only those directly affected by a standard are in a position to contribute to its establishment can not be sustained. * * * MPIRG has apparently conducted much research and data collection on this very subject, which if considered in establishing the standards would probably be to the benefit of the persons that the standards are to protect."

Our conclusion that the term "interested person" must be broadly construed in order to accomplish the legislative purpose of the Minnesota Act is supported by contrasting that term with

the more limited and specific terminology used in other provisions of that Act prescribing the parties who may participate in the development of standards in various capacities other than initiating public hearings. Minn. St. 182.653, subd. 5, and 182.-654, subd. 3, enumerating the parties which may participate in a hearing on proposed standards—as opposed to requesting such a hearing—designate such parties as "any employer or association of employers" and "any employee or association of employees." If the legislature actually intended, as DLI contends, that the term "interested person" be construed more narrowly than the terms "employer" or "employee"—contrary to the ordinary and accepted meaning of these words—it could have explicitly granted the right to request a hearing to "any employee or employer, or group of employees or employers, directly affected by the proposed standards."

The broader construction of "interested person" is also consistent with regulations issued pursuant to the Federal Act delineating procedures which must be followed in adopting occupational safety and health standards under a state plan in order for that plan to be approved by the Secretary of Labor. One of these regulations, 29 C. F. R. 1902.4(b)(2)(iii), clearly indicates that the definition of "interested persons" entitled to submit information and participate in hearings is very broad and specifically includes the general public. The state plan must:

"(iii)   [Provide] a procedure for the development and promulgation of standards which allows for the consideration of pertinent factual information and affords *interested persons, including* employees, employers and *the public,* an opportunity to participate in such processes, by such means as establishing procedures for consideration of expert technical knowledge, and providing *interested persons, including* employers, employees, recognized standards-producing organizations, and *the public* an opportunity to submit information requesting the development or promulgation of new standards or the modification or

revocation of existing standards and to participate in any hearings." (Italics supplied.)

2. It is difficult to reconcile the trial court's separate determinations (1) that MPIRG is an "interested person" and thus entitled to request a hearing under the Minnesota Act, but (2) that it does not have standing to bring a judicial action challenging the validity of standards adopted after a denial of such requested hearing. A right to demand a hearing is for all practical purposes nonexistent if its conceded violation cannot be vindicated through judicial action. By the same token, the right to demand a hearing is meaningless if the party making such demand may not present the relevant data and evidence in its possession at such hearing. Yet, the trial court's memorandum in support of its orders states:

"* * * MPIRG cannot intervene and challenge an administrative action when it * * * will suffer no injury in fact if the standards are allowed to stand."

Similarly, the memorandum continues to lament the fact that the Minnesota Act, as construed by the trial court, denied to—

"* * * an interested bystander such as MPIRG the opportunity to present evidence, possibly of considerable value, during the course of administrative standard * * * promulgating."

Therefore, while the trial court stated its conclusion on the standing issue to be that "MPIRG does not have standing to bring this lawsuit", it seems that it is really holding that MPIRG does not have standing to participate in the DLI standard-making procedures by initiating a hearing.[2] Since the trial court held that the statutory prerequisite for initiating a hearing—being an "interested person"—was satisfied by MPIRG, it was

---

[2] It is not disputed that any employee or employer, including MPIRG, may participate in a hearing once an "interested person" initiates such hearing. Minn. St. 182.653, subd. 5, 182.654, subd. 3. Only the parties who may initiate hearings in the first place are limited by the term "interested person."

apparently concluding that the standing requirement as defined by case law supersedes the statutory requirement. Apparently the trial court assumed that the standing requirement is sufficiently rooted in constitutional jurisprudence that the legislature may not broaden its scope through specific enactments governing participation in particular agency proceedings.

We perceive this assumption to be the fundamental error in the trial court's analysis of the standing issue. The Minnesota Act is a creation of the Minnesota Legislature and has no roots in our common-law traditions. Consequently, the legislature may confer standing in these proceedings on those who may not meet judicially imposed standards for establishing standing in the absence of legislation specifying proper parties in any given type of judicial action. Legislative authority to determine which parties have standing to institute certain types of judicial action has been recognized by recent landmark decisions of the United States Supreme Court on the standing requirement.

In Sierra Club v. Morton, 405 U. S. 727, 732, 92 S. Ct. 1361, 1364, 31 L. ed. 2d 636, 641 (1972), the court wrote:

"* * * Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' * * * as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' * * * Where, however, Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.[3]"

"[3] Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions * * * or to entertain 'friendly' suits * * * or to resolve 'political questions,' * * * because suits of this character are inconsistent with the judicial func-

tion under Art. III. But where a dispute is otherwise justiciable, the question whether the litigant is a 'proper party to request an adjudication of a particular issue,' * * * is one within the power of Congress to determine." (Citations omitted.)

To similar effect, see Association of Data Processing Service Organizations, Inc. v. Camp, 397 U. S. 150, 151, 154, 90 S. Ct. 827, 829, 830, 25 L. ed. 2d 184, 187, 189 (1970):

"* * * [I]n terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. * * *

* * * * *

"Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved 'persons' is symptomatic of that trend."

In conclusion, there is no constitutional basis for imposing a more stringent standing requirement upon would-be participants in agency standard-making proceedings—either to participate in the original proceedings or to challenge their result through judicial review—than any such requirement which is set by the governing statute. The governing statute in this case, the Minnesota Act, sets clear standing requirements for both purposes. Minn. St. 182.655, providing that any "interested person" has standing to initiate a hearing has already been extensively discussed. The Minnesota Act also contains a specific provision setting forth the requirements for standing to seek judicial review of standards promulgated by DLI, Minn. St. 182.665:

"Any person aggrieved by a final order of the commission in a contested case, or by any standard, rule, regulation or order promulgated by the commissioner, is entitled to judicial review thereof in accordance with the applicable provisions of chapter 15."

Since we affirm the trial court's conclusion that MPIRG is an "interested person" entitled to initiate a hearing and present any pertinent data and information it may possess, it follows that MPIRG was "aggrieved" by DLI's denial of its request for such a hearing. To hold otherwise would render our conclusion that MPIRG is an "interested person" a nullity.

Having concluded that the Minnesota Act confers standing upon this plaintiff, we need not consider the multitude of court decisions on the requirements for standing where there is no such specific proper legislative definition thereof. Further, there is no intimation in this case that an advisory opinion was sought or that the matter was not tried in an adversary setting.

In summary we affirm the decision of the trial court that MPIRG is an "interested person" under the Minnesota Act and reverse its holding that MPIRG lacked standing to institute this action. While we hold that MPIRG had standing to seek judicial review of the promulgated standards, we do not hereby strike down such standards. Rather, they shall continue in force and effect until further proceedings consistent with this opinion are conducted by DLI, resulting in reaffirmance, modification, or repeal of the existing standards.

Affirmed in part; reversed in part.