**SUBURBAN NATIONAL BANK,**
petitioner, Appellant,

v.

**DEPARTMENT OF COMMERCE of the**
**State of Minnesota, Respondent,**

**James A. Cochrane, et al., applicants,**
**Intervenors.**

**No. 47417.**

Supreme Court of Minnesota.

Nov. 18, 1977.

Robert F. Collins, South St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Roderick MacKenzie, Helen I. Kelly, Spec. Asst. Attys. Gen., and Thomas R. Muck, Asst. Atty. Gen., St. Paul, for respondent.

Faegre & Benson and Rodger L. Nordbye and James B. Loken, Minneapolis, for intervenors.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

PER CURIAM.

Suburban National Bank of Eden Prairie appeals from an order of the district court affirming a decision by the Minnesota Commerce Commission under Minn.St. 45.07, authorizing the acquisition of the Prairie State Bank's charter from its original applicants and the relocation of the bank to a site nearby Suburban National's planned location in Eden Prairie. We affirm.

■ This court has long emphasized the limited scope of its review of the commission's decisions under § 45.07. E. g., *First Nat. Bk. of Shakopee v. Dept. of Commerce,* Minn., 245 N.W.2d 861 (1976); *State ex rel. Dybdal v. State Securities Commission,* 145 Minn. 221, 225, 176 N.W. 759, 761 (1920).

■ Suburban National does not question the fairness or completeness of the commission's extensive hearings on this matter or the reasonableness of its findings of fact. Suburban National's first two arguments focus on the commission's conclusions of law, which are phrased in the general terms of the criteria articulated in § 45.07.[1] By narrowly focusing on portions of the conclusions of law, Suburban National argues it is uncertain whether the commission actually applied the statutory criteria to the specific facts of this case. We find no merit in these arguments. The record of the hearing and the commission's decision—consisting of findings of fact, conclusions of law, and an order—clearly show that the com-

mission properly considered and based its decision on the statutory criteria. At most, Suburban National has only pointed to technical imperfections in the commission's expression of its conclusions of law.

■ Suburban National's third argument is that the commission failed to give adequate reasons for its conclusion that the probable volume of business would support both Suburban National and Prairie State and that this failure violates Minn.St. 15.-0422, and the standards of *In re Application of Jackson,* 277 Minn. 293, 295, 152 N.W.2d 472, 474 (1967), and *Bryan v. Community State Bank,* 285 Minn. 226, 231, 172 N.W.2d 771, 775 (1969). We reject this argument. The commission's findings of fact are a detailed determination of the facts relevant under the statute.

■ Finally, Suburban National argues that the commission's findings and conclusions are contradicted by statements of the commission in two other unrelated matters. The first of these was an application to charter another state bank in Eden Prairie in 1973. The commission denied the application on the ground that Prairie State would completely satisfy public demand. But at the 1976 hearings involving the application in the present case, there was evidence that the area had grown rapidly and its deposit potential had increased. Thus, the commission's decision in 1976 in this case is in no way contradicted by its decision on the matter in 1973. The second unrelated matter invoked by Suburban National concerns the denial of a national bank application by the comptroller of the currency in 1974 to a bank seeking to locate in the Maplewood area where a state bank was about to commence business. The Minnesota deputy banking commissioner testi-

1. Minn.St. 45.07 provides: "If the applicants are of good moral character and financial integrity, if there is a reasonable public demand for this bank in this location, if the organization expenses being paid by the subscribing shareholders do not exceed the necessary legal expenses incurred in drawing incorporation papers and the publication and the recording thereof, as required by law, if the probable volume of business in this location is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing bank or banks in the locality without endangering the safety of any bank in the locality as a place of deposit of public and private money, and if the department of commerce is satisfied that the proposed bank will be properly and safely managed, the application shall be granted otherwise it shall be denied. * * * "

fied at the comptroller's hearing and emphasized the dangers of too much competition when banks are beginning operations in a new area. The only bearing of this testimony on the present case is to show Minnesota authorities are alert to this danger and to suggest that they did not find it a concern in the present case.

Affirmed.

OTIS and TODD, JJ., took no part in the consideration or decision of this case.