**In the Matter of the Application by Archie C. BLACK, III, Christopher J. Smith and Richard E. Struthers for a Certificate Authorizing IAI Trust Company to Transact Business in that Name in Minneapolis, Hennepin County, Minnesota.**

No. C5–94–134.

Court of Appeals of Minnesota.

Sept. 30, 1994.

Review Denied Nov. 29, 1994.

Roger A. Peterson, Peterson, Engberg & Peterson, Minneapolis, for relator Union Bank & Trust Co.

Hubert H. Humphrey, III, Atty. Gen., Norine Olson–Elm, Asst. Atty. Gen., St. Paul, for respondent James E. Ulland, Comm'r of Commerce.

Michael Berens, Kelly & Berens, P.A., Minneapolis, Steven G. Lentz, Associate Counsel, Minneapolis, for respondent Investment Advisers, Inc.

Considered and decided by ANDERSON, P.J.,* FORSBERG and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

By writ of certiorari relator Union Bank & Trust Company (Union Bank) seeks review of respondent Commissioner of Commerce's denial of Union Bank's hearing request and the Commissioner's approval of respondent Investment Advisers, Inc.'s charter to operate a trust business.

## FACTS

Investment Advisers, Inc. (IAI) is a financial institution based in Minneapolis. On July 8, 1993, it filed with the Commissioner of Commerce (Commissioner) an application for trust powers to do business as IAI Trust Company (IAI Trust). See Minn.Stat. § 46.-041, subd. 1 (1992). On July 30, 1993, Union Bank, a Minneapolis-based state-chartered bank and trust company, filed written objections to IAI's application for trust powers. Union Bank also filed a request for a hearing under Minn.Stat. § 46.041, subd. 3.

On October 21, 1993, the Commissioner denied Union Bank's hearing request and informed Union Bank that it had 14 days to submit comments concerning IAI's trust charter application. Union Bank informed the Commissioner that it had never been provided with IAI's response to the hearing request. On November 5, the Commissioner confirmed that the hearing request was de-

nied and reopened the 14–day period to provide comments to IAI's application. *Id.*

On November 19, Union Bank submitted comments and objections to IAI's application, alleging IAI could not prove three of the statutory criteria necessary for certification as a trust company. See Minn.Stat. § 46.044, subd. 1 (Supp.1993) (criteria includes, among others, good moral character, reasonable public demand for the proposed trust company, and no threat to existing trust companies' solvency). Union Bank also informed the Commissioner that IAI was owned by a United Kingdom-based financial institution, a circumstance IAI had not disclosed to the Commissioner.

On December 21, 1993, the Commissioner granted IAI's application, while imposing a number of conditions on IAI's certificate of authorization. On January 20, 1994, by writ of certiorari, Union Bank challenged the Commissioner's order denying Union Bank's hearing request and the approval of IAI's application.

## ISSUES

I. Does Union Bank have standing to appeal the Commissioner's decision?

II. Was the Commissioner's denial of Union Bank's request for a hearing arbitrary and capricious?

III. Is IAI's application for trust powers supported by substantial evidence in the record?

IV. Did the Commissioner exceed his statutory authority by imposing conditions on IAI?

V. Should the "Memorandum" attached to the Commissioner's order be considered part of the record?

VI. Was there ex parte communication that influenced the Commissioner's decision?

## ANALYSIS

### I. Standing

IAI argues that Union Bank lacks standing to challenge the Commissioner's de-

---

* Serving as judge of the Minnesota Court of Appeals by appointment of the Minnesota Supreme Court pursuant to an order dated September 23, 1994, and filed September 23, 1994.

cision. According to Minn.Stat. § 46.044, subd. 1 (Supp.1993), a "person aggrieved" may obtain judicial review of the Commissioner's determination. *See Minnesota Pub. Interest Research Group v. Minnesota Dep't of Labor and Indus.*, 311 Minn. 65, 72, 249 N.W.2d 437, 441 (1976) (standing may be conferred by statute or by reason of judicial recognition). An aggrieved person is one who is "injuriously or adversely affected by the judgment or decree when it operates on his rights of property or bears directly upon his personal interest." *In re Getsug*, 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971).

We hold an intervenor such as Union Bank, which challenges an application for a proposed trust company in its vicinity and obtains an adverse result, falls within the ambit of an aggrieved party under section 46.044, subdivision 1. Plainly the Commissioner's order bears directly upon Union Bank's interest as a competitor of the proposed IAI Trust. Further, Union Bank's participation in the challenge to IAI's trust company application, while not by itself sufficient to accord Union Bank standing, strengthens its stature as a "person aggrieved" by the order. *See In re Implementation of Energy Conservation*, 368 N.W.2d 308, 312 (Minn.App.1985). Moreover, case law indicates that an objector to an application may seek review of the Commission's order approving the application. *See, e.g., Suburban Nat'l Bank v. Department of Commerce*, 260 N.W.2d 291 (Minn.1977) (intervenor appealed from Commerce Commission's granting of a new bank application). Finally, if IAI's position were embraced, intervenors that formally objected to a trust company's application, but failed to convince the Commissioner that the new trust company had not met the statutory criteria, would probably not have standing. For these reasons, we disagree with IAI's position, and hold that under the circumstances in this case Union Bank has standing to appeal the Commissioner's decision.

1. Under Minn.Stat. § 46.044, subd. 1 (Supp. 1993), judicial review is in accordance with chapter 14.

## II. Hearing Denial

██ Union Bank argues the Commissioner's decision to deny its request for a hearing is arbitrary and capricious. *See* Minn.Stat. § 14.69 (1992) (an agency's decision may be reversed if arbitrary or capricious).[1] An arbitrary or capricious decision "represents the agency's will and not its judgment" or "is without evidence to support the conclusion." *M.T. Properties, Inc. v. Alexander*, 433 N.W.2d 886, 893 (Minn.App.1988) (quoting *In re Whitehead*, 399 N.W.2d 226, 229 (Minn. App.1987)), *pet. for rev. denied* (Minn. Feb. 22, 1989).

### A. Jurisdiction

██ IAI argues Union Bank failed to timely appeal from the Commissioner's hearing request denial and therefore this court lacks jurisdiction to review the appeal. We disagree. The Commissioner's denials of Union Bank's hearing request in October and November 1993 were not final decisions for the purpose of judicial review. *See* Minn. R.Civ.App.P. 103.03(g) (an appeal may be taken from a final decision affecting a substantial right made in an administrative proceeding); *Overseas Commodities Corp. v. Dockman*, 389 N.W.2d 254, 256 (Minn.App. 1986) (certiorari will not ordinarily lie to review an order unless the order is a final determination of the parties' rights). Here, the denial of the hearing request did not determine Union Bank's rights; instead the denial of Union Bank's request was an intermediate order not appealable. The final determination of Union Bank's rights was not made until the Commissioner approved IAI's application. As Union Bank's appeal from that decision was timely, this court may review the Commissioner's denial of the hearing request. *See* Minn.R.Civ.App.P. 103.04 (this court may review any order affecting the order from which the appeal is taken).

### B. Hearing Request

██ Union Bank claims the Commissioner abused its discretion by denying its hearing request. *See* Minn.Stat. § 46.041,

subd. 3 (1992) (Commissioner must evaluate hearing request and determine whether to deny or grant the request). A hearing must generally be granted only if the Commissioner determines the written submissions would be "inadequate or that a hearing would otherwise be beneficial to the decision-making process." *Id.*

The Commissioner denied Union Bank's request, concluding (a) Union Bank's objections were not "unusual or complex" so as to require cross-examination; (b) Union Bank did not indicate it intended to provide an expert witness; (c) there was a lack of public concern or interest in Union Bank's application; and (d) Union Bank was able to explain the issues in written statements. The record supports the Commissioner's conclusion and therefore we hold the Commissioner acted within its discretion by denying Union Bank's request for a hearing.

Union Bank advances two arguments, each of which is unpersuasive. First, Union Bank's reliance on pre–1987 case law to support its claim there is a "uniform practice" of reviewing applications by contested case hearings is misplaced. It is true that before 1984, a public hearing was required on every application. *See* Minn.Stat. § 45.04, subd. 1 (Supp.1983). But beginning in 1984, hearings were only required if the application was contested. *See* 1984 Minn.Laws, ch. 576, § 1. After 1987, hearings were only required when the Commissioner determined one would be beneficial to the decision-making process. *See* 1987 Minn.Laws, ch. 349, art. 3, § 1 as codified in Minn.Stat. § 46.041, subd. 3 (1992). Consequently, Union Bank's reliance on pre–1987 case law is without merit.

Second, Union Bank argues that the Commissioner did not show he had the knowledge or resources to address questions arising from IAI's foreign ownership. Union Bank, however, does not identify why the review of an application by a foreign-owned corporation requires special expertise other than that which the Department of Commerce possesses. Thus the Commissioner was not arbitrary in denying Union Bank its hearing request. *See Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977) (reviewing court should show deference to an agency's expertise and special knowledge).

### III. Application Approval

Union Bank argues that IAI failed to prove three criteria necessary for approval of its trust application. *See* Minn.Stat. § 46.-044, subd. 1 (listing necessary conditions for issuing a trust charter). This court must uphold the Commissioner's factual findings if they are supported by substantial evidence. *See* Minn.Stat. § 14.69(e) (1992); *St. Paul Area Chamber of Commerce v. State Pub. Serv. Comm'n,* 312 Minn. 250, 258–60, 251 N.W.2d 350, 355–57 (1977) (findings of agency reviewed under substantial evidence test).

### A. Good Moral Character

Union Bank challenges the Commissioner's finding that IAI had "good moral character." Minn.Stat. § 46.044, subd. 1. The record shows: (a) IAI is registered under the federal Investment Company Act of 1940; (b) IAI is licensed under the Minnesota Securities Act and regulations as an investment advisor; (c) IAI will own the new Trust Company; (d) IAI's 1992 financial statement shows equity capital of $32.6 million and assets of $41.1 million; (e) none of the applicants, directors, or officers have been adjudged bankrupt or been criminally indicted in a matter involving dishonesty; and (f) none of the directors have been involved in a disciplinary proceeding concerning their business association. Under these facts, the Commissioner's finding that IAI possesses good moral character is supported by substantial evidence.

Union Bank challenges the Commissioner's finding that IAI had a good moral character on two grounds. First, it argues that "heightened scrutiny" must be used to evaluate IAI's character because of a trust company's stringent fiduciary obligations in customer dealings. Union Bank, however, cites to no authority that requires the Commissioner to employ a different standard when reviewing a trust company application rather than a bank charter application. Moreover, even if a different standard exists, Union Bank does not show how IAI breached a heightened standard.

Second, Union Bank argues IAI's failure to disclose that an employee is suing IAI and its

chief executive officer was evidence of lack of good moral character. A former employee has sued IAI, claiming among other things that he was terminated for reporting a securities law violation to IAI. IAI denies the employee's allegations. The Commissioner did not infer any wrongdoing from this lawsuit and accordingly this court will affirm the Commissioner's finding. *See Reserve Mining*, 256 N.W.2d at 825 (unless manifestly unjust, an agency's inference must be accepted even though contrary inferences would be better supported).

### B. Reasonable Public Demand

An applicant for trust powers must show a reasonable public demand for the company to exist at the proposed location. Minn.Stat. § 46.044, subd. 1; *see Dybdal v. State Sec. Comm'n*, 145 Minn. 221, 224, 176 N.W. 759, 760 (1920) (reasonable public demand presumes a substantial community desire so as to make the "bank welcome and insure an amount of business" to promise its success). The Commissioner found a reasonable public demand existed within the identified trade area (seven county metropolitan area) and the geographic market (500–mile radius of metropolitan area), but Union Bank claims the Commissioner's finding lacks substantial support in the record.

In finding a reasonable public demand exists, the Commissioner used as evidence a report, entitled "Market Feasibility Study," submitted by IAI. Among other things, the study shows: (a) sixty percent of IAI's trust business would originate in the metropolitan area; (b) the metropolitan area's population grew by 15 percent between 1980 and 1990; (c) the metropolitan area's median household wealth was expected to increase from $70,726 in 1991 to $89,795 in 1996; (d) the metropolitan area's total trust assets increased from almost $13 billion in 1982 to nearly $22 billion in 1990; (e) managed trust assets increased in Minnesota by 102 percent between 1980 and 1990; (f) employee benefit agency accounts grew in Minnesota by 610 percent between 1980 and 1990; (g) the average size of trust accounts increased 355 percent in Minnesota from 1980 to 1990; (h) IAI Trust was projected to attract $170 million in trust assets in the first year and $330 million by its fifth year. Under these facts, we conclude sufficient evidence supports the Commissioner's finding. *See Bryan v. Community State Bank*, 285 Minn. 226, 234–35, 172 N.W.2d 771, 776–77 (1969) (using change in population, number of banks in area, proposed location of bank, household income, and marketing survey as indicia to determine reasonable public demand).

Union Bank marshals three arguments to the contrary. First, Union Bank argues that Minneapolis' 24 percent vacancy rate for office space indicates it is not a "thriving" area and therefore the public demand for IAI Trust is decreased. The Commissioner, however, found that the office space will likely be absorbed during the next six years; moreover, IAI's focus is not limited to the downtown Minneapolis area, but embraces the greater Midwest. Second, Union Bank challenges the Commissioner's reliance on national data. Even were this reliance misplaced—which is disputed because national statistics may reflect regional trends—the statistics from the geographical area, by themselves, support the Commissioner's finding that a reasonable public demand exists. Finally, Union Bank argues the Commissioner adopted IAI's evidence in a wholesale fashion, relying solely on the "Market Feasibility Study" while ignoring the study's inconsistencies. The alleged inconsistencies, however, can be resolved in IAI's favor; moreover, this court defers to the Commissioner's credibility determination of an expert witness. *See First Nat'l Bank v. Department of Commerce*, 310 Minn. 127, 134, 245 N.W.2d 861, 865 (1976) (weight and credibility of experts is a matter within the Commissioner's province). Accordingly, the Commissioner did not err by finding IAI satisfied this criterion.

### C. Threat to Solvency

Third, Union Bank challenges the Commissioner's finding that IAI's proposed market is large enough to absorb another trust institution without jeopardizing the solvency of existing trust companies. *See* Minn.Stat. § 46.044, subd. 1.

The record shows: (a) sixteen institutions in the metro area offer trust services; (b) no single institution controls more than 25

percent of the total managed trust assets; (c) total trust assets in the metropolitan area increased from almost $13 billion in 1982 to over $21 billion in 1990; (d) managed trust assets in Minnesota increased by 102 percent between 1980 and 1990; (e) employee benefit trust assets in Minnesota grew 610 percent between 1980 and 1990; and (f) of the nine competitors within a three mile radius of IAI Trust only Union Bank provided objections to IAI's application. When different inferences may be drawn from the evidence, as Union Bank attempts to do, such inferences are not necessarily grounds to reverse the Commissioner's finding. *See Reserve Mining,* 256 N.W.2d at 825 (when different inferences may be drawn from the evidence, the agency's findings must be upheld). In this case, the evidence provides substantial support for the finding that IAI will not jeopardize the solvency of other trust companies in the vicinity and therefore we affirm the Commissioner's decision.

### IV. Conditions

 Union Bank argues that the Commissioner exceeded his authority by imposing conditions on IAI's application. *See* Minn.Stat. § 14.69(b) (1992) (agency decision may be reversed or remanded if made in "excess of the statutory authority."). An agency's powers may only be exercised in the manner prescribed by its legislative authorization. *See Waller v. Powers Dep't Store,* 343 N.W.2d 655, 657 (Minn.1984).

Union Bank argues that the Commissioner imposed conditions upon IAI's application without statutory or regulatory authority. We disagree. Three of the conditions the Commissioner placed on IAI involved the final process of setting up IAI Trust: the required capital had to be deposited in a bank; the sublease agreement had to be completed; and administrative agreements needed to be finished. The other conditions addressed such issues as notice to the Commissioner if ownership changed, *see* Minn. Stat. § 46.048, subd. 1 (Supp.1993); establishment of a guaranty fund, *see* Minn.Stat. § 48.67; and a provision for proof of fidelity bond coverage and workers' compensation coverage. We hold that imposition of these conditions falls within the Commissioner's discretion and therefore Union Bank's argument is unpersuasive. *See In re State Farm Mut. Auto. Ins. Co.,* 392 N.W.2d 558, 565 (Minn.App.1986) (Commissioner's power should be construed within the context of the "necessity and logic of the situation.").

### V. Memorandum

 Union Bank's claim that the memorandum attached to the Commissioner's order should be stricken from the record lacks merit. The papers and exhibits filed in the agency shall constitute the record on appeal in all cases. *See* Minn.R.Civ.App.P. 110.01; Minn.R.Civ.App.P. 115.04 (reference to the trial court in rule 110.01 shall be read as a reference to the agency). Though the memorandum was unsigned and undated, it was attached to and served upon the parties with the Commissioner's December 1993 order and was part of the agency record.

### VI. Ex Parte Communication

 Union Bank argues IAI communicated with the Commissioner in a manner that may have unduly influenced the Commissioner. It identifies a December 1993 letter from an IAI representative to the Commissioner requesting the Commissioner to act on the application. In the letter's closing, the representative states the "process has been long and tedious" and requests a "prompt resolution of the issues." It is highly unlikely the letter unduly influenced the Commissioner and therefore the letter is not grounds for reversal.

### DECISION

The Commissioner acted within his discretion by denying Union Bank's request for a hearing. The Commissioner's order approving IAI's trust charter is affirmed.

**Affirmed.**