# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A24-2031

Minnesota Teamsters Service Bureau,
Respondent,

vs.

GoodRx, Inc.,
Appellant.

**Filed September 2, 2025**
**Affirmed**
**Slieter, Judge**

Hennepin County District Court
File No. 27-CV-24-9554

Jacob R. Rusch, Zackary S. Kaylor, Johnson Becker, PLLC, St. Paul, Minnesota; and

Michael J. Wall (*pro hac vice*), Herzfeld, Suetholz, Gastel, Leniski, and Wall PLLC, Nashville, Tennessee (for respondent)

Todd Wind, Panhia Vang, Fredrikson & Byron, P.A., Minneapolis, Minnesota; and

Gregory Silbert (*pro hac vice*), Weil, Gotshal & Manges LLP, New York, New York (for appellant)

Considered and decided by Slieter, Presiding Judge; Frisch, Chief Judge; and Ede, Judge.

## SYLLABUS

Under the plain and unambiguous language of Minn. Stat. § 325F.784 (2024), a plaintiff has statutory standing to sue without alleging that they have suffered an injury in fact.

## OPINION

**SLIETER**, Judge

Appellant GoodRx Inc. challenges the district court's denial of its Minn. R. Civ. P. 12.02(a) motion to dismiss this action under Minn. Stat. § 325F.784, arguing that respondent Minnesota Teamsters Service Bureau lacks standing. Because the statute grants Teamsters standing, we affirm.

## FACTS

Because this appeal comes before us on the denial of a motion to dismiss under 12.02(a) for lack of standing, the facts derive from the complaint and are presumed to be true. *Forslund v. State*, 924 N.W.2d 25, 32 (Minn. App. 2019).

Minnesota Teamsters Service Bureau is a nonprofit corporation organized under Minnesota law and based in Minneapolis. It provides a variety of services and benefits to its members and their families, including "behavioral health services, drug and alcohol assessment, relationship counseling, financial counseling, retirement planning, elderly care consultation, legal referrals, and financial assistance."

GoodRx is a corporation with a registered agent in Minnesota, has business relationships with pharmacies throughout Minnesota, and offers consumers coupons and access to discounts on prescription drugs. GoodRx also offers subscriptions that purportedly give paying members special discounts on prescription-drug purchases. GoodRx provides consumers with prescription-drug discount cards for use at Minnesota pharmacies.

2

Teamsters alleges that GoodRx violates Minn. Stat. § 325F.784, which governs prescription-drug discount cards. More specifically, Teamsters alleges that GoodRx distributes prescription-drug discount cards that do not comply with the statute because they do not, in "bold" and "prominent" type, express that GoodRx is not insurance. Teamsters admits that it "has never used [GoodRx's] cards." However, Teamsters claims that it is "expressly authorized to sue" under the statute. Teamsters commenced this lawsuit under Minn. Stat. § 325F.784 "to enforce the statute against [GoodRx] and recover damages that will be used for charitable purposes."

GoodRx moved to dismiss Teamsters' claim, primarily asserting a lack of standing, and the district court denied GoodRx's motion.

GoodRx appeals. Though motions to dismiss are not generally appealable, such motions based on lack of standing are immediately appealable under *Stone v. Invitation Homes, Inc.*, 986 N.W.2d 237, 245 (Minn. App. 2023), *aff'd*, 4 N.W.3d 489 (Minn. 2024).

## ISSUE

Does Teamsters have statutory standing under Minn. Stat. § 325F.784?

## ANALYSIS

In relevant part, section 325F.784, subdivision 2, provides:

> (a) The attorney general, or an individual or other person, may maintain an action to enjoin any act in violation of this section and for the recovery of damages.
>
> . . . .
>
> (2) It is not necessary, except to recover for actual damages under clause (3), item (ii), that actual damages

3

> to the plaintiff be alleged or proved in order to maintain an action under this section.

Teamsters does not allege actual damages under clause (3), item (ii).

GoodRx argues that Teamsters lacks standing because it has "zero stake in the controversy." GoodRx asserts that statutory standing requires "the plaintiff to demonstrate an interest in the dispute to establish standing, even when the statutory language did not expressly require it." Teamsters asserts that Minn. Stat. § 325F.784 does not require any injury to have standing.

To consider the parties' arguments, we proceed in three parts. First, we consider broadly the law on standing. Second, we consider specifically the law on statutory standing. Finally, we apply the law to these facts and the parties' arguments.

**A.**

When a party lacks standing, "a court does not have jurisdiction to hear the matter." *Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 18 (Minn. App. 2003) (citing *Annandale Advoc. v. City of Annandale*, 435 N.W.2d 24, 27 (Minn. 1989)). We review *de novo* a district court's determination of whether a party has standing. *In re Gillette Children's Specialty Healthcare*, 883 N.W.2d 778, 784 (Minn. 2016). When considering a motion to dismiss for lack of standing, both the district and appellate courts must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Forslund*, 924 N.W.2d at 32 (quotation omitted).

4

"Standing is acquired in two ways: either the plaintiff has suffered some injury-in-fact or the plaintiff is the beneficiary of some legislative enactment granting standing." *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007) (quotation omitted). Standing "focuses on whether the plaintiff is the proper party to bring a particular lawsuit." *Hayden v. City of Minneapolis*, 937 N.W.2d 790, 799 (Minn. App. 2020) (quotation omitted), *rev. denied* (Minn. Apr. 14, 2020). Standing requires a party to have "a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). However, in Minnesota, "[t]he legislature may, by statute, expand the connection between conduct and injury necessary to permit suit." *Id.* at 495.

Therefore, standing is acquired either when a party has suffered an "injury-in-fact" or when a party is the beneficiary of some legislative enactment granting standing. *Id.* at 493, 495. We next consider the law on statutory standing.

**B.**

We summarize the statutory-standing cases that we review by the legal topic involved as identified by the particular statute under which a claim was made. These topic areas are antitrust law, public-interest law, and voting law. And though there are other topic areas involving statutory standing which have resulted in appellate litigation, some of which we mention briefly below, the topic areas we consider here encapsulate significant appellate decisions and provide an instructive summary of statutory-standing law.

5

*Antitrust Law*

In *Lorix*, the supreme court recognized statutory standing to a consumer of tires who brought a class-action lawsuit claiming price-fixing by the manufacturer of rubber-processing chemicals used to make the tires. 736 N.W.2d at 622, 631. The plaintiff's claim was based upon Minnesota's antitrust statute, Minn. Stat. § 325D.57 (2006). This provision related to standing states:

> *Any person * * * injured directly or indirectly* by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.

*Id.* at 623 (emphasis added) (quoting Minn. Stat. § 325D.57).

The *Lorix* court pointed out that in 1984 the legislature added the words "directly or indirectly" when referring to "any person" who was injured by a violation of the statute, which made clear the legislative intent that, contrary to federal antitrust law, indirect purchasers who were harmed may recover under the Act. *Id.* at 623, 626-27. The court in *Lorix* then referenced the only previous case involving a substantive discussion of antitrust standing since this 1984 amendment, *Humphrey*, in which the supreme court explained that the antitrust law "contains an 'expansive grant of standing' designed to protect Minnesota citizens from 'sharp commercial practices.'" *Id.* at 627 (quoting *Humphrey*, 551 N.W.2d at 496-97). And though in *Lorix* the supreme court declined to "define the outer limits of standing in Minnesota," it determined that the consumer's situation "falls well within them." *Id.* at 631.

As noted from the *Lorix* opinion, the supreme court had a previous opportunity to consider statutory standing in *Humphrey*, 551 N.W.2d at 495-97. The court considered whether Blue Cross and Blue Shield of Minnesota had standing to sue Philip Morris and other tobacco companies pursuant to, among other statutes, the Minnesota antitrust statute. In citing the same language later considered in *Lorix*—"injured directly or indirectly"—it concluded that "[it] is clear that this expansive grant of standing reaches the injuries suffered by Blue Cross." *Humphrey*, 551 N.W.2d at 492, 495-96.

### *Public-Interest Law*

In *Minnesota Public Interest Research Group v. Minnesota Department of Labor & Industry*, the supreme court considered whether the Minnesota Public Interest Research Group (MPIRG) was an "interested person" authorized by Minn. Stat. § 182.655 (1976) "to request a hearing on proposed standards regulating the use of certain toxic substances pursuant to the Minnesota Occupational Safety and Health Act of 1973." 249 N.W.2d 437, 437 (Minn. 1976).

The specific statutory language the supreme court considered in *Minnesota Public Interest Research Group* provided that an "interested person" may submit written data or comments on any rules proposed by the department. *Id.* at 438; *see also* Minn. Stat. § 182.655, subd. 2. The department of labor and industry argued "that only employers and employees directly affected by the proposed standards" are "interested persons." *Minn. Pub. Int. Rsch. Grp.*, 249 N.W.2d at 439. Though the statute did not define "interested person," the supreme court completed an "analysis of various provisions of the Minnesota [Occupational Safety and Health Act of 1973]" which revealed "a legislative intent that

such term be broadly construed." *Id.* It then concluded that, because MPIRG had a personal stake in the outcome of the controversy, it was an "interested person" that may provide comment to the department by requesting a hearing and accordingly "had standing to seek judicial review of the promulgated standards" that the department enacted after denying MPIRG's request for a hearing on those proposed standards. *Id.* at 438, 442.

***Voting Law***

We now consider a trio of cases, heavily cited by the parties though for differing purposes, all three of which consider statutory standing to bring a claim under Minnesota's election law, Minn. Stat. § 204B.44(a) (2024). [1] These cases are: *Clifford v. Hoppe*, 357 N.W.2d 98 (Minn. 1984); *League of Women Voters Minnesota v. Ritchie*, 819 N.W.2d 636 (Minn. 2012); and *Growe v. Simon*, 2 N.W.3d 490 (Minn. 2024).

The supreme court's consideration in all these election-law cases applies statutory standing as set forth in Minn. Stat. § 204B.44(a), which states that "[a]ny individual may file a petition in the manner provided in this section for the correction of any of the following errors, omissions or wrongful acts which have occurred or are about to occur." *See Clifford*, 357 N.W.2d at 99; *League of Women Voters Minn.*, 819 N.W.2d at 645 n.7; *Growe*, 2 N.W.2d at 499.

Though standing was not contested in *Clifford*, the supreme court stated in a footnote that: "J.B. Clifford's assertion that he is a registered voter of Minnesota's Third Congressional District is uncontroverted. A registered voter has a sufficient interest in the

---

[1] We cite the most recent version of Minn. Stat. § 204B.44 because there have been no substantive changes to the relevant provision.

election to raise the issue presented in this case." 357 N.W.2d at 100, 100 n.1 (quotation omitted).

In *League of Women Voters Minnesota*, the parties did not contest standing, but an *amicus curiae* did. 819 N.W.2d at 645 n.7. In that case, the petitioners sought, under section 204B.44, to correct alleged errors in the preparation of the ballot for the general election. *Id.* at 640. The supreme court explained the following in a footnote: "Because petitioners have properly filed a petition for the correction of an error in the placement of a question on an official ballot, within the legislative grant of standing in Minn. Stat. § 204B.44, we conclude that all petitioners have standing in the present dispute." *Id.* at 645 n.7.

And recently, the supreme court in *Growe* directly resolved an issue of standing contested by the parties to that election lawsuit. Pursuant to Minn. Stat. § 204B.44, the petitioners in *Growe* sought to declare that placing the name of then-former President Donald J. Trump's name on the 2024 presidential ballot was an error. 2 N.W.3d at 496. After reiterating the terms of the statute that "[any] individual may file a petition," the court in *Growe* stated that "[here], petitioners allege that they are registered voters in Minnesota who intend to vote." *Id.* at 499 (quoting Minn. Stat. § 204B.44(a)). It then cited from the footnote in *Clifford* stating that a "voter had a 'sufficient interest' in the election to bring a claim" under this provision and concluded that the petitioners had standing. *Id.* (quoting 357 N.W.2d at 100 n.1).

At the outset, we note a common thread involving statutory standing from this overview of supreme court caselaw. Each of the decisions involved an application of the

9

facts before it to the specific language of the statute which confers standing. And our review of additional caselaw regarding other statutes conferring standing—including cases that the parties have cited tangentially—reveal this common thread. *See, e.g.*, *Citizens for a Balanced City*, 672 N.W.2d at 18 (evaluating whether parties can challenge zoning decisions as "aggrieved persons" under Minn. Stat. § 462.361, subd. 1 (2002)); *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 11 (Minn. 2001) (requiring a person to be injured to bring an action pursuant to Minn. Stat. § 8.31, subd. 3a (2000)).

The other observation we make is that, contrary to all the other cases that we have reviewed involving statutory standing, the statute we consider—section 325F.784, subdivision 2—contains an explicit statement that "[i]t is *not* necessary . . . that actual damages to the plaintiff be alleged or proved in order to maintain an action under this section." (Emphasis added.)

With this review of supreme court caselaw involving statutory standing, we now consider its application to the parties' arguments.

### C.

GoodRx's central claim of error by the district court is that, "[b]ecause [Teamsters] disclaims any injury or connection to the matter of the dispute," it has no interest in this matter and, therefore, has no standing. As support for this argument, GoodRx identifies eight supreme court decisions and claims that, in "all eight, the Court required the plaintiff to demonstrate an interest in the dispute to establish standing, even when the language did not expressly require it." We have summarized above the key cases among those eight.

10

We first address GoodRx's recitation, purportedly supporting its argument, of a principle commonly repeated in caselaw. This principle is exemplified in *Growe*, which states that, in Minnesota "[a] party can obtain standing in two ways: (1) if it has suffered some injury in fact, *or* (2) if it is the beneficiary of some legislative enactment granting standing." 2 N.W.3d at 499 (emphasis added) (quotation omitted). GoodRx asks that we focus our attention on the first type of standing to the exclusion of the second type. This, we cannot do.

It is undisputed by the parties that the sole basis upon which Teamsters claims standing is through a legislative grant. Nevertheless, GoodRx argues that Teamsters is required to have a "sufficient stake in a justiciable controversy in order to bring a lawsuit." For the reasons we next explain, we believe that this argument conflates statutory standing with injury-in-fact standing, and it misreads the statutory-standing caselaw.

GoodRx leans heavily on *Lorix* for its argument that Teamsters does not have standing because it has no stake in its claim. In particular, GoodRx relies on the statement in *Lorix* that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits . . .; otherwise, almost any antitrust violation would provide almost any citizen with a cause of action." 736 N.W.2d at 631. However, as we noted in our discussion of *Lorix*, the Minnesota antitrust statute specifically requires a claim of injury, either directly or indirectly. The issue which confronted the supreme court was whether the consumer was the beneficiary of standing based upon her indirect claim of injury. *Id.* And though the court in *Lorix* stated that there may be other cases in which a claim of indirect harm may be too remote to qualify under the antitrust statute, it determined the consumer in that case

had standing. *Id.* Most importantly for our analysis, the statute we consider here explicitly disclaims the need for "actual damages" in order to bring a claim. Minn. Stat. § 325F.784, subd. 2(c)(2).

For the same reason, GoodRx's argument that the supreme court's decision in *Humphrey*—which held that Blue Cross possessed the "necessary interest" to bring its action—suggests that Teamsters must also demonstrate such an interest in this action is unpersuasive. 551 N.W.2d at 492. *Humphrey* involved the same antitrust statute involved in *Lorix* and, as we note, the statute we consider here explicitly obviates the need to show damage to have standing.

GoodRx also directs our attention to the three voting-law cases—*Clifford*, *League of Women Voters Minnesota*, and *Growe*—and points out that the statutory grant of standing by the statute there is "even broader than the one considered in *Lorix*" because that statute is silent as to requiring an interest, and yet the supreme court "examined whether the petitioners had the necessary interest" to bring the claim. However, we do not discern, upon our careful review of these voting cases, that the supreme court added a standing requirement other than that which is identified by the statute—"any individual."

We first consider *Growe*. When discussing whether the petitioners had standing, the supreme court recited the statutory language that "[a]ny individual may file a petition." *Growe*, 2 N.W.3d at 503 (quoting Minn. Stat. § 204B.44(a)). It additionally stated, after citing *Clifford* and *League of Women Voters Minnesota*, that the "petitioners intend to vote in the general election and at least one of the petitioners specifically intends to vote in the Republican Party presidential nomination primary." *Id.* at 499. However, nowhere in the

*Growe* decision did the supreme court require that a petitioner *must* intend to vote to be conferred standing by the statute, which includes no such requirement.

Likewise, in a footnote in *Clifford*, the supreme court stated that a "registered voter has a sufficient interest in the election" to have standing. 357 N.W.2d at 100 n.1. But nowhere does *Clifford* hold that the petitioner must vote to be conferred standing.

And finally, in *League of Women Voters Minnesota*, the supreme court again addressed standing in a footnote, stating that, "[b]ecause petitioners have properly filed a petition for the correction of an error in the placement of a question on an official ballot, within the legislative grant of standing in Minn. Stat. § 204B.44, . . . all petitioners have standing in the present dispute." 819 N.W.2d at 645 n.7. Notably, nowhere in this footnote, which discusses standing by nonprofit organizations, did the supreme court reference the need that they intend to vote. Instead, the supreme court reasoned that, because nonprofit organizations are "'individual[s]' within the meaning of Minn. Stat. § 204B.44," and they properly filed a petition pursuant to the statute, they have standing. *Id.*

In sum, contrary to GoodRx's claim, when the statute conferring standing is silent in terms of whether an individual must have an injury, caselaw does not require that an individual possess such an injury in order to have statutory standing.

Finally, we consider GoodRx's argument that Teamsters must have some stake in its claim because the legislature "surely did not intend for anyone in the world to enforce Minnesota's rules for prescription drug discount cards covered by the statute." We are unpersuaded.

We interpret the language of statutes *de novo*, *Findling v. Grp. Health Plan, Inc.*, 998 N.W.2d 1, 6 (Minn. 2023), and we do so "to ascertain and effectuate the intention of the legislature," Minn. Stat. § 645.16 (2024).  Neither party argues that section 325F.784, subdivision 2(c)(2), is ambiguous and we conclude that it is not.  "[W]hen the statutory text is clear and unambiguous, we give effect to the plain language." *Cambria Co. v. M&M Creative Laminants, Inc.*, 11 N.W.3d 318, 323 (Minn. 2024).  In doing so, we do not "go beyond the plain language of the statute to determine the intent of the legislature." *Minn. Voters All. v. County of Ramsey*, 971 N.W.2d 269, 275 (Minn. 2022) (quotation omitted).

Applying these principles, we are not persuaded by GoodRx's concerns as to the breadth of the statutory language.  We instead hold that, under the plain language of section 325F.784, a plaintiff has statutory standing to sue without alleging that they have sustained actual injury.

## DECISION

The district court properly determined that Teamsters has statutory standing under Minn. Stat. § 325F.784.  Accordingly, the district court did not err in denying GoodRx's motion to dismiss.

**Affirmed.**