In the Matter of a Complaint Against
the SANDY PAPPAS SENATE
COMMITTEE.

No. C7–91–1898.

Supreme Court of Minnesota.

July 24, 1992.

Rehearing Denied Aug. 26, 1992.

Martha Casserly, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Kenneth Tilsen, St. Paul, for Sandy Pappas Senate Committee.

Raymond W. Faricy, Faricy & Dunn, St. Paul, for Russell L. Doty.

COYNE, Justice.

We accepted review of the decision of the court of appeals denying the Minnesota Ethical Practices Board's motion to discharge a writ of certiorari issued upon petition of relator Russell L. Doty to consider the issue of his standing to petition for a writ of certiorari. We reverse.

In the 1990 DFL primary Sandra Pappas defeated Donald Moe for the office of State Senator of District 65. She went on to win the general election.

In August 1990 Pappas signed a contract with the Board in which she agreed to abide by the terms of the Ethics in Government Act. By a 20–page complaint dated April 11, 1991 and delivered to the Board, Doty, an assistant to Moe before the senator lost the 1990 primary, alleged that in the course of her campaign, Pappas violated the act in 17 respects by exceeding campaign spending limits and failing to record properly campaign expenditures and contributions. By letter dated October 4, 1990, Pappas had informed the executive director of the Board that she had exceeded the campaign spending limits,[1] and the Board had begun its review of Pappas's campaign records before it received Doty's complaint. In her October 4, 1990 letter Pappas also attempted to rescind her agreement and thereby disqualify herself from receipt of state election campaign funds. Minn.Stat. § 10A.322, subd. 1 (1990), provides, however, that "[a]n agreement may not be rescinded after [September 1]."

Following two informal hearings at which Pappas and Doty were each offered the separate opportunity to present comments, submit documents, and answer the Board's questions, the Board and Pappas entered into a conciliation agreement pursuant to which Pappas paid a civil fine of $903.42, the amount of her excess expendi-

---

1. The Board is subject to the terms of the Minnesota Administrative Procedure Act. Minn.Stat. § 10A.02, subd. 13. While noteworthy, the fact that a contested case was not initiated by the Board, nor requested by Pappas or Doty, nor required by the act is not dispositive of standing. Minn.Stat. § 14.63 affords judicial review to those persons aggrieved by a final agency decision in a contested case; however, it does not limit the availability of judicial review to such circumstances. See also Minn.R. chap. 4525. Thus, a person is not deprived of standing to invoke judicial review of an agency action merely because the disputed agency decision did not arise out of a contested case; at the same time, however, participation in a contested case proceeding does not guarantee standing. What our decisions require is that to have standing in a judicial sense to invoke review of an agency decision the person seeking review must suffer injury in fact as a consequence of the agency action. See County of Ramsey v. Minnesota Public Utilities Comm., 345 N.W.2d 740, 744 (Minn.1984).

tures.[2] On August 22, 1991 the Board made its findings in the *Matter of a Complaint Against the Sandy Pappas for Senate Committee,* concluding that the committee unintentionally exceeded the campaign expenditure limit by $903.42, that the committee made eight inadvertent reporting errors which had been amended in accordance with Minn.Stat. § 10A.23, and that the remaining allegations in Doty's complaint were unsubstantiated. The Board dismissed the complaint and entered correspondence into the public record pursuant to Minn.Stat. § 10A.02, subd. 11 (1990).

Doty sought judicial review of the Board's determination by petitioning the court of appeals for a writ of certiorari pursuant to Minn.Stat. § 480A.06, subd. 3 "upon the grounds that [the Board's decision] is not in conformity with the provisions of Minnesota Statutes 10A, and is unwarranted by the evidence." The court of appeals issued certiorari, prompting the Board and the Sandy Pappas for Senate Committee to move pursuant to Minn. R.Civ.App.P. 127 for discharge of the writ on the ground that Doty lacked standing. The court of appeals denied the motion to discharge the writ, holding that Doty had standing to invoke judicial review of the Board's decision in the Pappas matter. *In re Sandy Pappas Senate Committee,* 478 N.W.2d 337 (Minn.App.1991).

■ Standing may be conferred by statute or it may exist by reason of judicial recognition of a particular relationship between a person and an actionable contro-

versy. *Minnesota Public Interest Research Group v. Minnesota Dept. of Labor and Industry,* 311 Minn. 65, 72, 249 N.W.2d 437, 441 (1976). Because the Ethics in Government Act does not confer standing upon complainants to the Board, if Doty has standing, he has it in its judicial manifestation. In the absence of a discernible legislative intent to the contrary, it has long been established that a person has standing to invoke judicial review of agency action only if that person suffers "injury in fact" as a consequence of that action. *See, e.g., Snyder's Drug Stores, Inc. v. Minnesota State Bd. of Pharmacy,* 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974). *See also* Minn.Stat. § 14.63 (1990): "Any person aggrieved by a final decision in a contested case is entitled to judicial review of the decision * * * * "

■ Doty contends that as a result of what he asserts is the Board's improper interpretation of the provisions of chapter 10A, its assessment of the extent of Pappas's liability for violation of the act's terms was inadequate. To have standing to petition successfully for writ of certiorari, however, a person must assert more than dissatisfaction with an agency's interpretation of statutes: the person must articulate with a degree of clarity some legally cognizable interest of his which has sustained injury in fact by the agency action—i.e., that he has in fact sustained injury to some interest which differs from injury to the interests of other citizens generally. *See Twin Ports Convalescent, Inc. v. Minnesota State Bd. of Health,* 257

---

**2.** Minn.Stat. § 10A.02, subd. 11 (1990) provides that "[i]n the case of a written complaint alleging a violation of section 10A.25 or 10A.27, the board shall either enter a conciliation agreement or make a public finding of whether or not there is probable cause [to believe a violation has occurred], within 60 days of the filing of the complaint." Minn.Stat. § 10A.28 (1990) prescribes the penalty for exceeding limits:

Subdivision 1. **Candidate exceeding expenditure limits.** A candidate subject to the expenditure limits in section 10A.25 who permits the candidate's principal campaign committee to make expenditures or permits approved expenditures to be made on the candidate's behalf in excess of the limits imposed by section 10A.25, as adjusted by section

10A.255, is subject to a civil fine up to four times the amount which the expenditures exceeded the limit.

\* \* \* \* \* \*

Subd. 3. If the board finds that there is reason to believe that excess expenditures have been made or excess contributions accepted contrary to the provisions of subdivision 1 or 2 the board shall make every effort for a period of not less than 14 days after its finding to correct the matter by informal methods of conference and conciliation and to enter a conciliation agreement with the person involved. A conciliation agreement made pursuant to this subdivision shall be a matter of public record * * * *

N.W.2d 343 (Minn.1977); *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). As the United States Supreme Court put it in *Sierra Club:*

> The requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome. That goal would be undermined were we to construe the [federal] APA to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process.

405 U.S. at 740, 92 S.Ct. at 1368–69 (footnote omitted).

■■■ Doty argues that by participating in the Board's proceedings, a legally cognizable interest arose in him that, by virtue of the Board's ruling, sustained injury in fact. Certainly, pursuant to Minn.Stat. § 10A.02, subd. 9 (1990), it was proper for any registered voter to file a complaint with the Board and to appear before the Board at its informal hearings; however, Doty did not thereby acquire a legally cognizable interest in the outcome of the Board's proceedings, for in its judicial manifestation, standing cannot come into existence solely by participation in agency proceedings. *In re Acquisition of Flying Cloud Airport*, 226 Minn. 272, 32 N.W.2d 560 (1948). A mere "interest" in the problem, regardless that the interest is longstanding, does not confer standing on an individual or organization. Neither does that individual's expertise in evaluating the problem render that individual "adversely affected" or "aggrieved" within the meaning of Minnesota's Administrative Procedure Act. *Cf. Sierra Club*, 405 U.S. at 739, 92 S.Ct. at 1368. While Doty may have enhanced the Board's ability to discharge its regulatory function by interjecting himself into the proceeding against

Pappas, he has no more standing to invoke judicial review than does a crime victim or any witness to invoke judicial review of a jury verdict of acquittal, conviction of a lesser included offense, or of a guilty plea negotiated between prosecutor and criminal. *See, e.g., Diamond v. Charles*, 476 U.S. 54, 64–65, 106 S.Ct. 1697, 1704–05, 90 L.Ed.2d 48 (1986). Doty argues further that he has suffered injury as a taxpayer, contending that as a result of the Board's interpretation of the act's spending limits, Pappas received public funds to which she was not entitled. While he is correct to reference *McKee v. Likins*, 261 N.W.2d 566 (Minn.1977) for the proposition that we have expressed a willingness to characterize "injury in fact" broadly in the taxpayer standing context, his reliance on that case is misplaced. In *McKee*, we concluded that a taxpayer who challenged government rulemaking authority by declaratory judgment action had standing "to restrain the unlawful use of public funds." *Id.* at 571. In contradistinction, Doty's source of disagreement does not lie with the promulgation of rules making possible the allocation of tax revenue to a campaign subsidy fund or with the actual allocation of such funds, but instead it lies with the Board's disposition of the Pappas matter. Because the act does not authorize the Board to withhold public election campaign funds as a penalty for spending violations but instead provides only for fines and civil sanctions based on the amount by which expenditures exceeded the statutory limit, Doty has no actionable claim against the Board for disbursement of those public campaign funds. *See* Minn.Stat. § 10A.28 (1990). Inasmuch as Doty seeks judicial review of the Board's assessment of Pappas's liability and inasmuch as the Board was powerless to redress any harm he as an individual taxpayer could possibly have suffered by Pappas's receipt of the subsidy, he is not situated to profit from a taxpayer standing argument.

By our decision we do not suggest that agencies which fail to discharge their regulatory duties are free from the prospect of judicial review. We hold only that because

the Board's adjudication of Pappas's liability did not cause Doty to suffer injury in fact, he lacks standing necessary to cause a writ of certiorari to issue. We therefore discharge the writ of certiorari issued by the court of appeals upon the petition of Doty and dismiss this appeal.

Reversed.