Virginia STANSELL, et al., on behalf of themselves and the State of Minnesota, Appellants,

v.

CITY OF NORTHFIELD, Respondent,

Target Stores, a division of Dayton Hudson Corporation, Respondent.

No. C3–00–708.

Court of Appeals of Minnesota.

Nov. 7, 2000.

Michael B. Chase, St. Paul, for appellants.

George C. Hoff, Paula A. Callies, Hoff, Barry & Kuderer, P.A., Eden Prairie, for respondent City of Northfield.

John B. Gordon, Michael A. Ponto, Paul B. Civello, Faegre & Benson LLP, Minneapolis, for respondent Target Stores.

Considered and decided by SCHUMACHER, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.[*]

## OPINION

SCHUMACHER, Judge.

Appellants Virginia Stansell, Gary Stansell, Judy Swanson, Stephen Swanson,

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Marilyn Haugen, Georgiana Campbell, Arthur Campbell, and Keith Harrison, on behalf of themselves and the State of Minnesota (the Northfield residents), sued respondent City of Northfield, alleging that the Northfield city council lacked authority to adopt two ordinances that allegedly contradicted an ordinance adopted by the initiative of the voters and that the council's actions in doing so violated various statutes, including the Minnesota Environmental Rights Act (MERA). Respondent Target Stores, a division of Dayton Hudson Corporation, was granted leave to intervene as a defendant. Northfield and Target moved for summary judgment, and the district court granted the motions. On appeal, the Northfield residents challenge only the district court's rulings that the city council had the authority to adopt the two ordinances and that the council's actions did not violate MERA. We affirm.

## FACTS

In late 1997 or early 1998, Target began to investigate the possibility of building a store in Northfield. At the time, the zoning for the site Target wanted to build on would not allow uses of that nature. In October 1998, a group of Northfield residents presented an initiative petition to adopt an ordinance permitting development of large-scale retail projects such as the Target store. Attached to the initiative petition, as required by the city charter, was a proposed ordinance. The proposed ordinance, however, was in draft form; it included various comments, questions, and explanations in bracketed italics scattered throughout the text of the ordinance. When the city council did not enact the ordinance in a final form acceptable to the sponsoring committee within 60 days, the sponsoring committee requested that it be put to a vote of the electorate.

The proposed draft ordinance was published three times before the election, the first and third times including the bracketed questions, comments, and explanations,

the second time without them. When the voters went to the polls, however, they apparently did not have before them the exact text of a proposed ordinance. Instead, the voters voted yes or no to the following initiative question: "Shall the City of Northfield enact an ordinance to permit planned development zones for large-scale retail establishments in highway commercial districts?" A majority of voters voted yes.

After the election, the city council continued working with Target on the final form of an ordinance that would allow Target to proceed with its project. The city council eventually passed Ordinances 718 and 719. The ordinances differed in some areas from the initiative ordinance proposed by the sponsoring committee.

The Northfield residents sued Northfield to prevent the city council from implementing Ordinances 718 and 719, claiming that those ordinances contradicted the initiative passed by the voters, violated several statutes, and were otherwise illegal. The district court granted Target leave to intervene as a defendant. Northfield and Target brought separate motions for summary judgment, both of which the district court granted.

## ISSUES

1) Do the Northfield residents have standing to challenge the city council's authority to adopt Ordinances 718 and 719?

2) Did the trial court err in granting Northfield's and Target's motions for summary judgment on the MERA claim?

## ANALYSIS

 On an appeal from summary judgment, we ask whether there are any genuine issues of material fact in dispute and whether the trial court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We review de novo the district court's interpretation of the law, including questions of statutory interpretation. *Sorenson v. St. Paul*

*Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990); *Associated Builders & Contractors v. Carlson,* 590 N.W.2d 130, 134 (Minn.App.1999), *aff'd,* 610 N.W.2d 293 (Minn.2000). We view the evidence in the light most favorable to the party against whom summary judgment was granted and accept as true that party's factual allegations. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Summary judgment on a claim is mandatory against a party with the burden of proof who fails to establish an essential element of its claim, because that failure renders all other facts immaterial. *Lloyd v. In Home Health, Inc.,* 523 N.W.2d 2, 3 (Minn.App.1994). We will affirm a grant of summary judgment if it can be sustained on any ground. *Winkler v. Magnuson,* 539 N.W.2d 821, 828 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996).

■ 1. The first issue we address is whether the city council had the authority to adopt Ordinances 718 and 719. If they had no such authority, we need not consider whether the ordinances violated MERA. The threshold question on this issue is whether the Northfield residents have standing to challenge the city council's authority to adopt the ordinances. Because the district court did not address standing, the Northfield residents question whether this issue is properly before the court, but "[s]tanding may be raised at any time." *Cochrane v. Tudor Oaks Condominium Project,* 529 N.W.2d 429, 433 (Minn.App. 1995) (citation omitted), *review denied* (Minn. May 31, 1995).

■ Although the Northfield residents' complaint alleges that they are "individuals * * * who have been injured by and have standing to challenge illegal actions by the Northfield City Council," they do not allege that they have suffered any specific injuries as the result of the city council's actions. Instead, they seem to be litigating a matter of public interest. Indeed, both their complaint and their brief on appeal claim they are prosecuting this

action "on behalf of themselves and the State of Minnesota."

■ Persons who wish to bring suit on a matter of public interest must demonstrate "either (1) damages distinct from the public's injury, or (2) express statutory authority." *Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.,* 603 N.W.2d 143, 146 (Minn. App.1999) (citations omitted), *review denied* (Minn. Mar. 14, 2000). The Northfield residents have alleged no distinct damages. As a result, absent statutory authority to sue, they would lack standing.

■ Minnesota law, however, does include a statute granting the right to sue to challenge a municipality's land-use actions:

> Any person aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351 to 462.364 may have such ordinance, rule, regulation, decision or order, reviewed by an appropriate remedy in the district court, subject to the provisions of this section.

Minn.Stat. § 462.361, subd. 1 (1998). The Northfield residents may therefore maintain their action if they qualify as "person[s] aggrieved" by the city council's action.

Neither the statute nor any published Minnesota case defines the term "person aggrieved" for the purpose of Minn.Stat. § 462.361. The term has, however, been defined in the context of other statutes. In order for an "aggrieved party" to have the right to appeal a decision under the Minnesota Administrative Procedure Act, for example, the person must be "injuriously or adversely affected by the judgment or decree when it operates on his rights of property or bears directly upon his personal interest." *In re Getsug,* 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971). This definition has also been applied to other statutes. *See, e.g., In re Black,* 522 N.W.2d 352, 355 (Minn.App.1994) (interpreting provision of Minn.Stat. § 46.044 allowing "person aggrieved" to obtain judi-

cial review of Commissioner of Commerce's determination), *review denied* (Minn. Nov. 29, 1994).

■ As a matter of statutory construction, we presume that the legislature uses the same words the same way, even in different statutes. *Angell v. Hennepin County*, 565 N.W.2d 475, 479 (Minn.App. 1997), *aff'd*, 578 N.W.2d 343 (Minn.1998). We therefore interpret the term "person aggrieved" in Minn.Stat. § 462.361 to grant standing to a person when an action by the municipality adversely "operates on his rights of property or bears directly upon his personal interest." *In re Getsug*, 290 Minn. at 114, 186 N.W.2d at 689. Because the Northfield residents have not alleged any such particularized injuries, they lack standing to challenge the city council's authority to adopt Ordinances 718 and 719.

2. The Northfield residents also claim that the ordinances violate the Minnesota Environmental Rights Act (MERA). MERA protects "air, water, land and other natural resources located within the state from pollution, impairment, or destruction." Minn.Stat. § 116B.01 (1998). Under the statute, the definition of the term "natural resources" includes "historical resources." Minn.Stat. § 116B.02, subd. 4 (1998). The term "historical resources" is not defined.

■ There is no dispute that Northfield's Central Business District is listed on the National Register of Historic Places. But the Northfield residents do not merely claim that the buildings in the district are protected "historical resources." They also claim that the Central Business District as a functioning economic entity is a protected historical resource.

The Northfield residents cite *Chinese Staff & Workers Ass'n v. City of New York*, 68 N.Y.2d 359, 509 N.Y.S.2d 499, 502 N.E.2d 176 (1986), as an example of a case where economic and cultural considerations were held protectible under an environmental statute. That case is not much

help in determining the scope of "historical resources" for MERA's purposes, however, because the statute in that case is more expansive than MERA, expressly defining the protected "environment" to include "existing patterns of population concentration * * * and existing community or neighborhood character ." *Id.* at 179.

Because the term "historical resources" is not defined in MERA, the Minnesota Supreme Court has

> identified certain factors that should be taken into account in determining whether a building falls under the protection of MERA, looking principally to the criteria used to determine what buildings are included on the National Register of Historic Places * * *.

*State by Archabal v. County of Hennepin*, 495 N.W.2d 416, 421 (Minn.1993). Although the criteria are quite broad, they do not naturally encompass the economic vitality or way-of-life concerns that the Northfield residents contend are protectible "historical resources." Read as a whole, the criteria primarily address buildings or other *places*, which we note are the criteria for inclusion on the National Register of Historic *Places*. Nonetheless, nothing in the criteria obviously forecloses the Northfield residents' interpretation, either.

■ Without specific authority from either Minnesota or other jurisdictions, we must look to general principles of statutory construction to determine whether the Central Business District as a functioning economic entity is a protectible "historical resource."

> If a statute is ambiguous, we must determine and give effect to the intent of the legislature. In determining the legislature's intent, we may consider the mischief to be remedied by the statute.

*In re Estate of Nordlund*, 602 N.W.2d 910, 913 (Minn.App.1999) (citations omitted), *review denied* (Minn. Feb. 15, 2000). When the language of a statute is unclear, a reviewing court should interpret the stat-

ute as consistently as possible with the purpose of the act. *Huffman v. School Bd. of Indep. Consol. Sch. Dist. No. 11,* 230 Minn. 289, 292, 41 N.W.2d 455, 457 (1950). When construing a statute, we may consider "the consequences of a particular interpretation." *Grudnosky v. Bislow,* 251 Minn. 496, 498, 88 N.W.2d 847, 850 (1958).

As Northfield and Target point out, to interpret MERA as the Northfield residents suggest would have far-reaching economic consequences, often conferring a significant economic advantage on businesses that happen to be located in historic buildings or districts—even including, as the facts of this case show, the ability to prevent otherwise lawful competition. Given that both state and federal antitrust law are designed to foster competition, it is unlikely that the legislature intended to impede such economic competition through the unusual vehicle of an environmental protection law. Such laws are designed to accomplish environmental ends, not economic ones. As a result, considering both the mischief sought to be prevented by MERA and the mischief that could be caused by the Northfield residents' interpretation, it appears that the best interpretation of "historical resources" excludes the economic and cultural factors the Northfield residents seek to protect in the Central Business District.

But that does not conclude our analysis. In order to make out a prima facie case under MERA,

[f]irst, there must be "a protectible natural resource" * * *. Second, conduct by the defendant must cause or be likely to cause "pollution, impairment or destruction" * * * of that resource.

*State by Schaller v. County of Blue Earth,* 563 N.W.2d 260, 264 (Minn.1997) (citations omitted). "Pollution, impairment or destruction" is defined as "any conduct which materially adversely affects or is likely to materially adversely affect the environment." Minn.Stat. § 116B.02, subd. 5 (1998).

There is no dispute that at the very least, the *buildings* in the Central Business District are protected "historical resources." The Northfield residents argue that they have provided detailed expert evidence that demonstrates that the new Target store "is likely to materially adversely affect" those buildings. Kennedy Smith, the Director of the National Main Street Center for the National Trust for Historic Preservation, offered two affidavits in which Smith opined, based both on experience with other communities and a study of Northfield, that opening the new Target store will lead to a decline in sales in the Central Business District, which will lead to merchants going out of business, which will lead to abandoned buildings, which will lead to the physical deterioration of those buildings.

The district court rejected this argument as "speculative and tenuous." We agree. Because the Northfield residents' chain of causation relies so heavily on economic considerations that are beyond MERA's intended scope, their causal chain is too attenuated as a matter of law. If successful, the Northfield residents' attempt to invoke MERA based on the possible remote effects of economic forces would convert the statute from an environmental protection law to an economic regulation. The Northfield residents' interpretation of the statute is unreasonable and produces a result that is plainly at variance with the policy of the statute considered as a whole. We need not adopt such an interpretation. *See Wegener v. Commissioner of Revenue,* 505 N.W.2d 612, 615 (Minn.1993).

### DECISION

The district court did not err in granting summary judgment to Northfield and Target.

**Affirmed.**