730 N.W.2d 300 (2007)
In the Matter of a PETITION FOR DECERTIFICATION OF AN EXCLUSIVE REPRESENTATIVE CERTAIN EMPLOYEES OF the UNIVERSITY OF MINNESOTA, UNIT 9, CROOKSTON, Minnesota, Respondent,
University Education Association, Education Minnesota, Duluth, Minnesota, Respondent,
v.
UNIVERSITY OF MINNESOTA, Minneapolis, Minnesota, Relator.
No. A06-892.
Court of Appeals of Minnesota.
April 24, 2007.
*302 Christina L. Clark, Harley M. Ogata, General Counsel, Education Minnesota, St. Paul, MN, for respondent University Education Association.
Mark B. Rotenberg, General Counsel, Shelley Carthen Watson, Associate General Counsel, Minneapolis, MN, for relator University of Minnesota.
Considered and decided by RANDALL, Presiding Judge; TOUSSAINT, Chief Judge; and HUDSON, Judge.

OPINION
HUDSON, Judge.
This certiorari appeal by the University of Minnesota from the dismissal of a decertification petition filed by a group of instructional employees at the university's Crookston campus requires us to consider whether for decertification purposes the Outstate Instructional Unit, also known as Unit 9, is a single unit comprising instructional employees at the Duluth and Crookston campuses, or two units, one comprising Duluth instructional employees and another comprising Crookston instructional employees. The Bureau of Mediation Services concluded that Unit 9 is a single unit and it dismissed the petition reasoning that it lacked the required showing of support by 30% of instructional employees at both the Duluth and Crookston campuses. The university challenges the bureau's determination, arguing that the appropriate unit for decertification purposes includes only Crookston instructional employees. By notice of review, respondent University Education Association challenges BMS's determination that the university is a party to the proceedings. Based on the plain language of the decertification provision in Minnesota's Public Employment Labor Relations Act, Minn. Stat. § 179A.12, subd. 3 (2004), we affirm.

FACTS
Minnesota's Public Employment Labor Relations Act (PELRA) identifies 13 bargaining units for University of Minnesota employees. Minn.Stat. § 179A.11, subd. 1 (2004). The Outstate Instructional Unit, known as Unit 9, consists of all instructional employees located at the university's Duluth campus (UMD). Id., subd. 1(9). Instructional employees at the university's Morris, Waseca, and Crookston campuses may independently elect to join Unit 9 if a majority of eligible employees at a particular campus votes to be included and the election is conducted after UMD instructional employees have voted in favor of representation. Id. The commissioner of the Bureau of Mediation Services (the commissioner) must hold an election if an employee organization or group of employees at a particular campus files a certification petition supported by 30% of eligible employees at that campus. Id.[1]
*303 The instructional employees at the Duluth campus voted in favor of representation by respondent University Education Association, Education Minnesota (UEA) in 1980. UEA and the university are parties to a collective bargaining agreement governing the UMD faculty that is effective by its terms from July 1, 2003 through June 30, 2006. In October 2004, UEA filed a petition to represent instructional employees at the university's Crookston campus (UMC). In January 2005, the UMC faculty voted to be included within Unit 9, which meant that they would be represented by UEA. In February 2005, the commissioner issued a certification of exclusive representative for Unit 9.
A year later, a group of UMC instructional employees filed a petition to decertify UEA as the exclusive representative of UMC instructional employees. UEA moved to dismiss the petition, arguing that the university was not a party to the proceeding and that because Unit 9 is one unit for decertification purposes, the decertification petitionwhich was supported by 30% of UMC instructional employees onlywas not supported by the required showing of interest (30% of all eligible employees within the Unit, including both the Duluth and Crookston campuses).
The Bureau of Mediation Services (BMS) ruled that the university was a party to the decertification proceeding, but it dismissed the petition, reasoning that Unit 9 was one bargaining unit that included UMC and UMD instructional employees and that the decertification petition was therefore unsupported by the required showing of interest. This certiorari appeal by the university follows.

ISSUES
I. Is the University of Minnesota a proper party to the decertification proceedings?
II. For purposes of decertification of an exclusive representative, is the Outstate Instructional Unit a single unit comprising Duluth and Crookston instructional employees or two units, one comprising Duluth instructional employees and another comprising Crookston employees?

ANALYSIS
An appellate court may reverse an agency decision if the decision reflects an error of law, if it is arbitrary, or if its findings are unsupported by the record. County of Scott v. Pub. Employment Relations Bd., 461 N.W.2d 503, 504 (Minn.App. 1990), review denied (Minn. Dec. 20, 1990). Questions of statutory interpretation are subject to de novo review. See Hibbing Educ. Ass'n v. Pub. Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985) (stating that the construction of PELRA raises a question of law). Although an agency's interpretation of a statute is "entitled to great respect," appellate courts are not bound by an agency's interpretation of a statute. Indep. Sch. Dist. No. 621 v. Pub. Employment Relations Bd., 268 N.W.2d 410, 412 n. 5 (Minn.1978).

*304 I
UEA argues that the appeal must be dismissed because the university is not a proper party to the proceedings and lacks standing. We disagree.
The rules adopted by the commissioner in connection with the administration of PELRA define a party as "any exclusive representative, employee organization, or public employer recognized by the commissioner[,] whose legal rights, duties, and privileges will be directly determined in the proceedings." Minn. R. 5510.0310, subp. 16 (2005) (emphasis added). The university is a "party" to the decertification proceedings within the meaning of PELRA because it is a public employer whose legal rights and obligations will be directly determined by the decertification proceedings. Depending on the outcome of the proceedings, the university will either regain the right to negotiate directly with UMC instructional employees and be required to comply with university policies regarding unrepresented instructional employees, or it will continue to be required to bargain in good faith with UEA with respect to UMC instructional employees and to comply with existing obligations under PELRA regarding represented employees. Because the university's rights and obligations will be directly determined by the decertification proceedings, the BMS correctly concluded that the university is a proper party to the proceedings.
UEA also argues that the university lacks standing to pursue this appeal because it has suffered no injury in fact. UEA specifically claims that because the university will be required to deal with UEA as the exclusive representative of Unit 9 and to comply with existing obligations under PELRA and university policies regardless of the outcome of the decertification proceedings, the university has suffered no injury in fact. We do not agree.
PELRA provides that an administrative decision regarding the appropriateness of a bargaining unit is appealable. See Minn.Stat. § 179A.051 (2004) (providing that "[d]ecisions of the commissioner relating to . . . appropriateness of a unit . . . may be reviewed on certiorari"). A party has standing to seek judicial review of an administrative decision if it has suffered an injury in fact or if the legislature has conferred standing. In re Pappas Senate Comm., 488 N.W.2d 795, 797 (Minn.1992). To establish standing, a party to an agency proceeding must show a "legally cognizable interest of his which has sustained injury in fact by the agency action." Id. The goal of this requirement "is to ensure that issues before the courts will be `vigorously and adequately presented.'" State by Humphrey v. Philip Morris, Inc., 551 N.W.2d 490, 493 (Minn.1996) (citation omitted).
As previously noted, the university is a party to the decertification proceedings under PELRA. We recognize that participation in an agency proceeding does not guarantee standing to seek review of the agency's decision. In re Pappas, 488 N.W.2d at 798. Instead, the party seeking standing must establish a legally cognizable interest in the outcome of the proceeding. Id. at 797. The decertification proceedings will determine the university's rights and obligations under PELRA with respect to UMC instructional employees. See Minn.Stat. § 179A.07, subds. 2-4 (2004) (providing that public employer has obligation to meet and negotiate in good faith with exclusive representative and to confer with professional employees and a duty not to meet with represented employees except through the exclusive representative). This legally cognizable interest is sufficient to ensure that the issues on appeal *305 have been vigorously and adequately presented and to confer standing on the university. Additionally, the university is essentially making the argument of the UMC faculty, who clearly has a real interest in the outcome of the proceedings.

II
The university next argues that the bureau's determination that Unit 9 is a single unit for decertification purposes is contrary to law. We disagree.
The plain language of PELRA's decertification provision authorizes a group of employees within an established unit to petition for decertification only of an established unit:
An individual employee or group of employees in a unit may obtain a decertification election upon petition to the commissioner stating the certified representative no longer represents the majority of the employees in an established unit and that at least 30% of the employees wish to be unrepresented.
Minn.Stat. § 179A.12, subd. 3 (2004) (emphasis added). PELRA recognizes only 13 bargaining units as "the appropriate units of University of Minnesota employees." Minn.Stat. § 179A.11, subd. 1 (2004). The Outstate Instructional Employees unit, or Unit 9, is one of the statutorily recognized bargaining units. After the instructional employees at UMC elected to join Unit 9, the commissioner certified the unit as including instructional employees at both the Duluth and Crookston campuses. PELRA does not recognize a bargaining unit comprising instructional employees at a single outstate campus other than UMD. Id. For purposes of subdivision 3, therefore, the established unit in this case is Unit 9 as certified by the commissioner. A decertification petition must thus be supported by at least 30% of eligible instructional employees at both the Duluth and Crookston campuses.
The university argues that because PELRA does not expressly prohibit UMC instructional employees from being considered the appropriate unit for decertification purposes, this court should recognize the UMC faculty as the appropriate unit. But recognizing the UMC faculty as the appropriate unit for decertification purposes would require us to ignore the plain language of the decertification statute, which refers to the employees in an "established unit." Minn.Stat. § 179A.12, subd. 3. PELRA does not recognize an established unit that comprises only UMC instructional employees.
The university next argues that because the administrative rules refer to "an appropriate unit" and a "proposed appropriate unit" in the context of decertification proceedings, the appropriate unit for decertification purposes may differ from the established units recognized in Minn.Stat. § 179A.11, subd. 1. See Minn. R. 5510.0310, subp. 9 (2005) (defining "decertification petition" by reference to "the majority of the employees in an appropriate unit" (emphasis added)); .0710, subp. 2 (2005) (requiring authorization signatures from "30 percent or more of the estimated number of employees in the established or proposed appropriate unit" (emphasis added)). But unlike the administrative rules, Minn.Stat. § 179A.12, subd. 3, does not refer to anything other than an established unit in the context of decertification elections. By contrast, in the context of certification elections, subdivision 3 requires the support of at least 30% of employees of a "proposed appropriate unit." Minn.Stat. § 179A.12, subd. 3. It is thus apparent that when the legislature's intent to allow groups other than an established unit to petition for certification is clear, the statutory language is also clear. Therefore, *306 the absence of language authorizing instructional employees at individual campuses to petition for decertification once they have elected to join an established unit reflects the legislature's intent not to authorize those employees to petition for decertification independently of the established unit. Why the administrative rules use different terms than the statute is not clear. But we need not consider the language of the rules when the statute is unambiguous on its face.
The university also argues that the bureau's determination that UMC instructional employees may not petition for decertification independently of the UMD faculty is inconsistent with PELRA's announced purpose of helping public employees to "freely choose their representatives." According to the university, because of the disparity in the numbers of instructional employees on the Crookston (48) and Duluth campuses (400) it would be impossible for the UMC faculty to meaningfully exercise the right to decertify an exclusive representative, and the representational wishes of UMC instructional employees would be dictated by the UMD faculty. To combine both campuses for decertification purposes would thus undermine PELRA's announced purpose.
But "the legislature has determined that the overall [statutory] policy is best accomplished by . . . granting public employees certain rights to organize and choose freely their representatives," not unlimited rights. Minn.Stat. § 179A.01(1) (2004) (emphasis added). PELRA granted instructional employees in each of the outstate campuses the right to decide whether to join an existing bargaining unit. But it did not grant them the right to petition for decertification of the exclusive representative independently of the established unit once they elect to join the unit. We recognize that because of the disparity in the number of instructional employees at the Duluth and Crookston campuses, it would be mathematically impossible for the UMC faculty alone to decertify the unit's exclusive representative. But to allow them to do so without obtaining the support of 30% of all eligible employees in the unit would be inconsistent with the plain language of the statute.
The university claims that "[t]here is no reason to conclude that the legislature did not intend each campus to determine its own status both for purposes of certification and decertification." But the plain language of Minn.Stat. § 179A.12, subd. 3, suggests that the legislature did not intend to treat certification and decertification proceedings alike. Instead, it intended to give instructional employees at each outstate campus the right to independently petition for certification but not the right to petition for decertification independently of the established unit once they elect to join the unit.
PELRA's severance provision is also inconsistent with the university's claim that Unit 9 is two units for certification and decertification purposes. The severance provision gives certain instructional employees, not including the UMC faculty, the right to sever from their bargaining units. Minn.Stat. § 179A.11, subd. 2 (2004) (giving law-school and health-sciences instructional employees the right to sever from Units 8 and 9). The university does not explain what status the UMC faculty would have if allowed to decertify UEA as the exclusive representative of UMC instructional employees without at the same time allowing the UMC faculty to sever from the unit. Presumably, the UMC faculty wishes not to be required to negotiate through UEA while at the same time maintaining the right to confer with the appropriate officials on matters of concern *307 to the group. But such status is acquired only through severance, and PELRA does not give UMC instructional employees the right to sever. See id. (providing that a group that separates from its unit pursuant to this section has no right to meet and negotiate but retains right to confer with officials on matters of concern to the group). Alternatively, the UMC faculty wishes to return to its pre-certification status. But before it can return to its pre-certification status, the faculty must sever itself from the unit, a right it does not have. The commissioner correctly concluded that the university's position requires one to read a severance provision into the statute where none exists.
The university next argues that UEA is estopped from arguing that Unit 9 must be defined as including UMC and UMD employees because it induced the faculty to vote for representation by representing that UMC faculty alone would be able to vote in a decertification election. The commissioner rejected the university's position. This court likewise cannot rely on campaign representations made by UEA as a guide to construing the statute in this case.
Finally, the university argues that the BMS erred by failing to consider the factors in Minn.Stat. § 179A.09 (2004) in determining that the UMC faculty was not an appropriate unit for decertification purposes. But section 179A.09 sets forth the factors the commissioner must consider when determining bargaining units that are not predetermined by statute. Because the university units are predetermined by Minn.Stat. § 179A.11, subd. 1, they are not subject to the section 179A.09 factors.

DECISION
Based on the plain language of Minn. Stat. § 179.12, subd. 3 (2004), we conclude that the commissioner correctly determined that for decertification purposes the established unit in this case is a single unit comprising instructional employees at the University of Minnesota's Duluth and Crookston campuses. The commissioner thus properly dismissed the certification petition filed by a group of UMC instructional employees for lack of the statutorily required support of at least 30% of employees in the established unit.
Affirmed.
NOTES
[1] Minn.Stat. § 179.11, subd. 1(9) provides as follows:

The Outstate Instructional Unit consists of the positions of all instructional employees . . . located at the Duluth campus, provided that . . . instructional employees of the same rank at the Morris, Crookston, or Waseca campuses shall be included within this unit if a majority of the eligible employees voting at a campus so vote during an election conducted by the commissioner, provided that the election shall not be held until the Duluth campus has voted in favor of representation. The election shall be held when an employee organization or group of employees petitions the commissioner stating that a majority of the eligible employees at one of these campuses wishes to join the unit and this petition is supported by a showing of at least 30 percent support from eligible employees at that campus.